[No. 45767-5-I. Division One. August 6, 2001.]

ARLENE ROBERTS, ET AL., *Appellants*, v. KING COUNTY, *Respondent*.

*Stephen K. Strong* and *David F. Stobaugh* (of *Bendich, Stobaugh & Strong, P.C.*) and *Charles K. Wiggins* and *Kenneth W. Masters* (of *Wiggins Law Offices, P.L.L.C.*), for appellants.

*Andrew J. Kinstler, Jennifer S. Divine*, and *Bradley H. Bagshaw* (of *Helsell, Fetterman, L.L.P.*); and *Karen A. Pool Norby* and *Peter M. Ruffatto*, for respondent.

GROSSE, J. — As a general rule policy statements in an ordinance or statute do not give rise to enforceable rights and duties. However, where legislation, despite being couched in words of policy, creates a mandatory duty but leaves to the discretion of an agency the specifics of implementation, the general rule is not always applicable. The question becomes one of the propriety of the discretion exercised by the agency. But where as here, the record lacks evidence of whether the agency considered its obligation, we are unable to evaluate the propriety of the agency's discretion. Thus, further proceedings are necessary in this

case. The action of the trial court to the contrary is reversed.

## FACTS

Because this is an appeal of a dismissal on summary judgment, we review the facts in the light most favorable to the appellants.[1]

The King County Charter requires the King County Executive to administer the personnel system in accordance with the personnel rules adopted by ordinance by the King County Council.[2] For various administrative reasons, by the 1970s King County had many employees working in similar jobs and receiving the same pay despite the fact that some worked 35 hours per week while others worked 40 hours per week. In 1979 King County adopted King County Ordinance 4324 which established its current personnel system. The preamble of King County Ordinance 4324 provides:

PREAMBLE:

This ordinance implements Sections 510 and 520 of the Charter by creating a personnel system ·for the county and by establishing personnel rules for administration of the personnel system. *Policies and standards* contained in this ordinance constitute the personnel rules of the county . . . .

One of the "policies and standards" contained in the ordinance was an equal pay for equal work provision.[3] By 1995, King County had amended that provision to read as follows:

It is the policy of the county that compensation for all county employees shall be equitably provided on the basis of equal pay for equal work.

A. Findings of fact.

1. The council finds that federal, state and local laws against discrimination provide adequate and appropriate rem-

---

[1] *See Robinson v. City of Seattle*, 102 Wn. App. 795, 804, 10 P.3d 452 (2000).

[2] KING COUNTY CHARTER § 520.

[3] KING COUNTY ORDINANCE 4324, § 36.

edies for any pay which is unequal on the basis of unlawful discrimination. *The equal pay policy set forth in this section is intended to set forth general county policy for equitable pay in county government for all equal jobs, even as to jobs between which no disparate impact exists upon protected classes.* Pay for represented employees is determined pursuant to the collective bargaining procedures established by law. This section shall not affect the collective bargaining position of the exclusive bargaining representatives of any employee or of the county.[4]

The ordinance also contained a provision that required the King County personnel manager to create a classification system for all county jobs.[5] King County's system of job classification divides county career service positions into 99 pay classifications. The plan groups together all positions that are substantially similar with respect to the type, difficulty, and level of responsibility, even though the specific job duties of each individual employee within a classification will not be identical.[6] Each classification is further broken down into 10 steps wherein pay is scaled according to seniority, skills, annual evaluations, and merit increases.[7]

The federal Fair Labor Standards Act of 1938 (FLSA) exempt positions[8] within a given class are paid the same annual salary regardless of whether the employees are required to work a 35-hour or 40-hour workweek. Employ-

---

[4] KING COUNTY CODE 3.12.170.A.1 (emphasis added). Exempted from the "equal pay" ordinance were employees in collective bargaining units and employees who became county employees when the County assumed control over the Municipality of Metropolitan Seattle.

[5] KING COUNTY ORDINANCE 4324, § 12.

[6] KING COUNTY ORDINANCE 4324, § 12(1).

[7] According to an undated internal county analysis of the "35 versus 40 hour pay issue" all jobs allocated to the same job class are equal. This analysis occurred some time after February 1996.

[8] "FLSA exempt" refers to positions that are exempt from overtime pay requirements because they are bona fide executive, administrative, or professional positions as defined by the Washington Minimum Wage Act (chapter 49.46 RCW) and the FLSA (29 U.S.C. §§ 201-219). Employees in these positions are paid a fixed annual salary rather than at an hourly rate.

ees are required to work a minimum of 7 or 8 hours per workday respectively (either 1,820 or 2,080 hours per year).

Arlene Roberts became a King County employee in 1981 when it took over most of the City of Seattle's Health Department pursuant to an inter-local agreement between the City of Seattle and King County.[9] In 1993, Roberts was classified as an accountant, but sought and obtained reclassification of her position to an administrative services officer I (ASO I) because her job duties exceeded the description of an accountant classification. In 1996, Roberts was promoted to ASO II. In both ASO positions Roberts was required to work 40 hours per week.

In 1983, Abu Sanusi began working in King County's Human Services Division as an Accountant II. From 1987 to 1996, Sanusi worked in King County's Finance Division as an accounting services supervisor, a FLSA exempt position. This position had a 35-hour workweek. In 1996, King County laid Sanusi off from his position in the Finance Division and he accepted a transfer to an ASO II position in the King County Department of Health which position had a 40-hour workweek.

The ASO II position is FLSA exempt and employees within the classification are paid the same salary whether their position is designated as having a 35- or 40-hour workweek. Because they are FLSA exempt, these employees are expected to work whatever hours are necessary to get their work done; they do not keep track of their working hours; and they do not earn overtime pay. However, FLSA exempt employees do accrue vacation and sick leave at an hourly rate. The classification system also includes a calculated hourly pay rate that is used to cash out the value of a departing employee's vacation and sick leave. Because FLSA exempt employees qualify for executive leave if their positions require them to work substantially in excess of the standard work schedule, employees who work a 35-hour workweek schedule qualify for executive leave after work-

---

[9] Roberts is now retired.

ing fewer hours than 40-hour-per-week employees. Another ASO II who shared an office with Roberts was required to work only 35 hours per week but was paid on the same scale as Roberts and Sanusi and received executive leave.

Career service guidelines in effect in 1991 guaranteed a minimum raise to county employees who were promoted. Similarly, employees who transferred between positions in the same classification or to a position with the same or lower salary range could not receive a salary below what they received before the transfer.[10]

Confusion arose about how to apply the policy when employees moved between positions that had 35- and 40-hour workweeks. To address this confusion, in 1991 the King County Human Resources Department adopted a policy of calculating the new salary on the basis of the hourly rates of pay for the two positions involved. Thus, if employees received a five percent increase in their hourly rate, their total annual salary would nonetheless decrease if they moved from a 40-hour to 35-hour workweek because they would be working 12.5 percent fewer hours than their 40-hour workweek in the original position. Similarly, if employees moved from a 35-hour workweek to a 40-hour workweek their total annual pay would increase by more than five percent because they would also be working 14.28 percent more hours per week than their 35 hours per week in the original positions.[11]

In 1993 King County Executive Tim Hill issued an executive order as an administrative policy and procedure. It pertained to FLSA exempt employees. It affirmed that FLSA exempt employees were required to work the hours necessary to satisfactorily perform their jobs, they were to be compensated on a salary basis, and they were not eligible

---

[10] The rule included an exception that prevented an employee's salary in the new position from exceeding the top of the salary range for the new position. This policy made no distinction between FLSA overtime eligible or exempt positions and the practice had been applied to exempt positions.

[11] When all the employees in a class changed from a 35-hour to a 40-hour workweek schedule, the county reevaluated compensation for the position based on market survey data.

for overtime pay or the accrual of compensatory time. Somewhat contradictorily, it also provided that employees whose positions required them to work substantially in excess of the standard work schedule were eligible to receive up to 10 days of additional executive leave annually.

In January of 1997, the Director of King County's Human Resources Department issued a memo that clarified King County policy on transfers between FLSA exempt positions. It specified that an employee's base monthly rate of pay in an existing position would establish the base salary in the new position and that the mandated promotional salary increase would be added to that base. It also provided that when schedule changes were made to FLSA exempt positions the same monthly rate of pay would be maintained.

Roberts and Sanusi first filed administrative requests for an equal pay review of their positions in 1996. Because they never received an answer to their administrative petitions, they filed this action on March 21, 1997 claiming that King County's implementation of its job classification system violated the equal pay provision. The trial court granted King County's motion to dismiss the case on summary judgment, concluding that the equal pay for equal work provision was a statement of general policy that did not create an independent cause of action. Roberts and Sanusi appealed.

## DISCUSSION

 Statutes that impose a mandatory duty on an agency usually also grant discretion to the agency on how to carry out those duties.[12] An agency's exercise of discretion does not permit it to disregard the clear language of the statute.[13] But an agency's grant of discretion is broad and we will uphold the agency's action so long as the discretion

---

[12] *See Rios v. Dep't of Labor & Indus.*, 103 Wn. App. 126, 139, 5 P.3d 19 (2000), *review granted*, 142 Wn.2d 1024 (2001).

[13] *Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 912, 949 P.2d 1291 (1997).

exercised is lawful and there is a reasonable basis for it.[14]

In *Washington Coalition for the Homeless v. Department of Social & Health Services* the court held that the Department of Social and Health Services (Department) necessarily abused its discretion to administer a statutory duty to provide child welfare services to homeless children where it denied the existence of the duty despite clear statutory language to the contrary.[15] The court held that under the unambiguous language of the statute the Department had a duty to adopt and administer a coordinated and comprehensive plan to provide child welfare services to all homeless children. The court held that the Department abused its discretion to administer that duty where it failed to adopt a comprehensive plan and provided only services to homeless children who were state-dependent orphans.

Similarly, in *Rios v. Department of Labor & Industries* the court held that the Department abused its discretion when it refused to regulate and monitor the exposure of farm workers to a particular toxic chemical. The Department itself did not dispute the health risks posed by certain pesticides or that a mandatory monitoring program would substantially reduce those risks. Thus, while the Department had discretion in how to regulate workplace hazards, it could not completely ignore its duty to regulate and protect farm workers whose employment exposed them to significant adverse health risks.[16]

■ On the other hand, in *Hillis v. Department of Ecology* the court held that although the Department of Ecology had a statutory duty to process water permit applications, it reasonably exercised its discretion when it adopted a schedule for processing permits even though the result of adopting the schedule was that most permit applications would not be processed for many years. The court held that the exercise of discretion was reasonable where the Depart-

---

[14] *See Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 394-95, 932 P.2d 139 (1997).

[15] 133 Wn.2d 894, 907-12, 949 P.2d 1291 (1997).

[16] *See Rios v. Dep't of Labor & Indus.*, 103 Wn. App. 126, 144-45, 5 P.3d 19 (2000), *review granted*, 142 Wn.2d 1024 (2001).

ment of Ecology adopted the schedule because it received limited funding from the Legislature to pursue its duty.[17] As the court in *Rios* recognized, taken together *Hillis* and the *Washington Coalition* cases establish that while agencies have procedural discretion in how they exercise their duties, that discretion does not permit them to completely refuse those duties.[18]

Here King County argues that the equal pay provision imposes no duty upon it and that even if the provision does impose a duty, the county reasonably exercised its discretion in implementing the equal pay provision because Roberts and Sanusi were salaried employees paid according to the county's job classification and pay step system. King County claims it has no duty under the equal pay provision for two reasons. The county first argues that the equal pay ordinance is a mere statement of policy that creates no duty. However, when determining the legislative intent of an ordinance we look to the whole ordinance rather than focus on a single phrase or words selected out of context and in the context of employment law "policy" is a term of art. Employment "policies and procedures" establish and govern employees' legal rights.[19] Ordinances and statutes can be the personnel "policies and procedures" that create legal rights in government employees.[20]

The King County Code expressly refers to the "policies and standards" established by ordinance as the "personnel rules" of the county.[21] The equal pay provision was merely one of numerous policies and procedures in the ordinance that governed the county's personnel system. Accordingly, the use of the word "policy" here is not a reference to

---

[17] *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 377-80, 385, 390-94, 932 P.2d 139 (1997).

[18] *See Rios*, 103 Wn. App. at 141.

[19] *See Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 104-05, 864 P.2d 937 (1994).

[20] *See Scannell v. City of Seattle*, 97 Wn.2d 701, 704-05, 648 P.2d 435, 656 P.2d 1083 (1982); *Johnson v. City of Aberdeen*, 14 Wn. App. 545, 546-47, 544 P.2d 93 (1975).

[21] KING COUNTY CODE 3.12.330.

general legislative policies. Rather, it is a reference to the county's employment rules.

■ King County further argues that even if the equal pay ordinance is a personnel regulation, it does not impose a mandatory duty on the county. This position is also mistaken. The use of the word "shall" in a statute indicates a mandatory duty.[22] Moreover, the King County Code expressly provides that unless the context clearly requires otherwise, "shall" is mandatory and "may" is permissive.[23] The word "shall" in the equal pay provision imposes a mandatory obligation on King County's Human Resources Department. King County has imposed upon itself a duty to provide equal pay for equal work.

■ What remains unclear is just what King County has done to fulfill its obligation. King County claims it exercised the discretion it has with regard to specific implementation plans when it classified the positions of Roberts and Sanusi and assigned them their step rankings. That is not sufficient. Simply because its employees are salaried and fall within its pay classification system does not appear to us, at least on this record, to satisfy the equal pay for equal work obligation. With regard to the classification system the relevant question is whether King County considered its obligation under the equal pay ordinance when it set the level of compensation for the positions, and if King County did so whether it acted reasonably.

There is evidence in the record that those assigned a 35-hour workweek normally work just 35 hours, while those assigned a 40-hour workweek are required to work the full 40 hours. If this is true, it creates a discrepancy in pay because the positions pay the same regardless of the nominal workweek. King County counters this evidence with what appears to be mere theory: that the exempt positions require well in excess of normal work hours to accomplish the task assigned such that the actual work-

---

[22] *Rios*, 103 Wn. App. at 139.

[23] KING COUNTY CODE 1.02.030(B).

week assigned is of no moment. A question for trial then is just what situation is the most frequent and how it accommodates the current policy regarding equal pay for equal work.

There is also evidence that when individuals work in excess of the nominal workweek to which they are assigned their entitlement to executive leave (compensatory time) is calculated on the basis of the assigned workweek. Thus, people on a 35-hour workweek who work in excess of 35 hours received compensatory time for that extra work. Meanwhile, people who work a 40-hour workweek do not receive compensatory time until they work in excess of 40 hours. Yet, both sets of employees receive the same compensation. Again, we are unable to discern from this record whether this practice is consonant with King County's current approach to the equal pay for equal work obligation.

In summary, King County has a duty to provide equal pay for equal work in some rational fashion. That duty is mandatory, although the specifics of how it is carried out are not. This record is not sufficient to answer the myriad questions that arise as to whether, for employees such as Roberts and Sansui, the current classification system adequately addresses the duty, if at all.

Reversed and remanded for trial.

AGID, C.J., and ELLINGTON, J., concur.

Review denied at 145 Wn.2d 1024 (2002).